STATE of Missouri, Respondent,

v.

Charles Eugene COX, Appellant.

No. 47524.

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1960.

Rehearing Denied March 14, 1960.

O. R. Newcomer, St. Joseph, for appellant.

John M. Dalton, Atty. Gen., James E. Conway, Asst. Atty. Gen., for respondent.

WESTHUES, Judge.

Defendant Charles Eugene Cox was tried and convicted of a felonious assault with intent to produce great bodily harm. His punishment was assessed at "Two (2) years in the Dept. of Corrections." A motion for new trial was overruled whereupon the trial court sentenced the defendant to "be confined in the Department of Corrections, for the State of Missouri, for and during a period of Two (2) years, for the crime of Felonious Assault." Defendant appealed to this court.

We shall refer to the points briefed by the defendant in the course of the opinion.

The evidence justifies the following statement: David Kent, the victim of the assault, was at the time of trial attending the University of Missouri. In March, 1958, he was attending a junior college in St. Joseph, Missouri. He worked part time for

a newspaper (The Gazette) and on the morning of March 22, 1958, at about one o'clock, he left the office of The Gazette and went to a party at the Chamber of Commerce Building. After spending some time there, he started to drive home in a 1957 Chevrolet. While driving east on Edmond Street, Kent stopped at Seventh Street for a red stop light. While at Seventh Street, Kent saw three boys in a car. Kent stated the boys kept looking at him and looked like tough characters so he locked the doors of his car. Kent drove on when the green light came on and proceeded to Eleventh Street and Mitchell where he stopped again for a red stop light. While in that position, the car containing the three boys that Kent had seen previously at Seventh and again at Ninth Street struck Kent's car from the rear. Kent described what occurred as follows:

"A. I immediately wondered why I had been hit in the rear. The streets were fine, there was good driving conditions, and I put my arm on the front of the back of the front seat and looked around and I saw that the three boys were back there again, the same ones I had seen at 9th and Edmond, and I started to get out to find out why they had hit my car, and by that time Tom Stufflebean was at the door and he wouldn't allow me to shut it again. He started hitting at me with a pipe and he hit me in the stomach probably six or seven times, and after the first time he hit me I leaned back in the seat on my back so I could kick at him. I thought I could make him stop if I could fight back at him, but he didn't stop and I wanted to get away from him. He was blocking the left side of the car and so I got out the right side of the car and as I got out I was hit over the head on the right side of the car by a tall boy who was later identified as Van Gordon and we scuffled. He had apparently hit me with this pipe as I was getting out of the car, I had been hit and he was there, and I

started hitting back at him. By this time I was pretty shaken up and he in the scuffling knocked off my glasses, and by this time people were coming out of the Mary Ann Cafe and the boys trying to run away, and I went back to the rear end of their Pontiac and took down the license number. I didn't take it down, I looked at the license number and memorized it, remembered it, and they drove away."

Kent further testified that he saw the defendant get out of his car after it struck his (Kent's) car and saw him get back into the car after the assault; that defendant Cox was the driver; that there were three boys present at the time of the assault. He identified defendant Cox, Charles Van Gordon, and Thomas Stufflebean as the three boys who were there when the assault took place.

After the boys left, Kent discovered that the left rear window of his car had been shattered. The three boys were arrested later on the same night. They were together in a car being driven at the time by the defendant. The police found a kitchen knife, a short lead pipe, and a hand tire pump in the car. A base of a tire pump which fitted the pump found in the boys' car was found in Kent's car.

A number of persons who came from the Mary Ann Cafe while the trouble was in progress testified for the State. Kenneth Smith, one of these witnesses, testified to the following facts:

"Q. Did you see anything unusual occur out on Mitchell Avenue that night? A. Yes. There was five or six of us standing there playing the pin ball machine, and I think I was shooting it at the time and two cars pulled up and one pulled up behind and we heard a noise and we went out the door. We seen three fellows out behind, they was already out and they was hitting on the car and we stood there for a minute trying to find out what was going on before we moved

out in the street, and two went up on one side of the car and one on the driver's side and opened the doors and was trying to pull the boy out that was in it, and the two that was on the other side they pulled him out the right hand side and they hit him over the head. By that time quite a few of us moved out into the street and they ran to the car and jumped in the car and took off, and I took the license number of the car and called the Police and gave them the number."

The above evidence was corroborated by a number of other witnesses.

Defendant denied that he participated in the assault, but admitted that his car came into contact with Kent's car. He explained this by saying the brakes of his car failed to hold.

■ We are of the opinion that the evidence justified a finding that defendant Cox actively participated in the assault. If the defendant's car accidently came in contact with Kent's car and no mischief was intended, the question may be asked, why did the defendant and his two companions immediately after the collision get out of their car with a lead pipe and a tire pump and assault Kent? Kent had not stepped out of his car. In fact, the evidence justifies a finding that the three pulled Kent from his car and without any provocation committed the assault. The evidence was ample to justify the verdict of the jury. This disposes of defendant's assignment of error wherein he claims that the evidence was insufficient and entirely circumstantial.

The defendant offered evidence tending to prove good character. When one of these witnesses, W. H. White, had testified that defendant's reputation in the community was good, the prosecutor cross-examined the witness and the following occurred:

"Q. During the time that you were discussing or hearing Charles Eugene Cox discussed in your presence, did you hear anyone discuss that at 2:00 A. M. on September 1, 1957, he was apprehended on Garfield Avenue for siphoning gas out of an automobile by Sergeant W. E. Wilson of the State Patrol and—

"Mr. Newcomer: (interrupting) We object and ask that the jury be discharged. That is very unfair.

"The Court: The objection is sustained and the jury instructed to disregard it, and Mr. Hale, the Court admonishes you not to ask that question again and feels that you were completely out of line, and I don't want to be harsh with you but your conduct will not be along that line further because you know that is improper, at least you ought to. The jury will totally forget about that question and disregard it entirely."

■■ The prosecutor, out of the hearing of the jury, then informed the court that he asked the question in good faith and that the defendant had been apprehended four or five times; that Sergeant W. E. Wilson of the State Patrol had arrested the defendant for siphoning gas out of a car on Garfield Avenue. The court, nevertheless, did not permit further cross-examination on that subject. The ruling of the court was erroneous, but the error was favorable to the defendant and against the State. A witness who has given evidence as to good character may be cross-examined as to rumors concerning the character of the person whose character is the subject of inquiry. 58 Am.Jur. 363, Sec. 658; 98 C.J.S. Witnesses § 387b, p. 153; State v. Harris, 324 Mo. 139, 22 S.W.2d 1050, loc. cit. 1051(4); State v. Hicks, Mo., 64 S.W.2d 287, loc. cit. 288(3).

The defendant states in his brief, with reference to the above ruling, that the trial court should have discharged the jury; that the reprimand administered by the court to the prosecutor did not remove the prejudice created by the conduct of

the prosecutor. As we have stated, the error was favorable to the defendant and therefore he was not prejudiced.

In another assignment of error, defendant says he should have a new trial because the Prosecuting Attorney, Mr. Frank Connett, spoke to one of the jurors about the case. Mr. Connett did not try this case. He was at the time trying some other case in another division of the court. In the case before us, Mr. Dan Hale and Mr. Mark Youngdahl, Assistant Prosecuting Attorneys, represented the State. During a recess, a juror and Mr. Connett walked down the courthouse steps together and did converse. They had been acquainted for some years. The trial court held a hearing and both the juror and Mr. Connett testified the defendant's case was not mentioned. The trial court held no prejudice resulted. We have reviewed the evidence as to what occurred. We are of the opinion that the trial court's ruling was proper. The State, by evidence, proved to the satisfaction of the trial court that no prejudice resulted. State v. Jones, 363 Mo. 998, 255 S.W.2d 801, loc. cit. 806 (9), (10).

The defendant complains because the trial court did not instruct on common assault. This point must be ruled against the defendant because the evidence did not justify such an instruction. Kent was struck with a lead pipe and a tire pump handle. It was an aggravated assault and serious enough so that Kent went to a hospital. There was no evidence justifying a finding of common assault. State v. Null, 355 Mo. 1034, 199 S.W.2d 639, loc. cit. 643(8); State v. Coffman, 360 Mo. 782, 230 S.W.2d 761, loc. cit. 763, 764(3–5); 6 C.J.S. Assault and Battery § 128d, pp. 1005–1007.

In his brief, defendant says that the information containing one count charged two separate and distinct crimes. The information charged the defendant with an assault with intent to do great bodily harm without malice under Section 559.190 RSMo 1949, V.A.M.S. The portion of the information which defendant claims charges two offenses reads: " * * * Charles Eugene Cox did then and there wilfully, on purpose and feloniously assault and beat one David Kent with means or force likely to produce great bodily harm with intent to produce great bodily harm to the said David Kent by wilfully, on purpose and feloniously hitting him, the said David Kent, about the head, face and body with means and force likely to produce great bodily harm, * * *." As we read the information, it charges but one offense. In the first part, it charges that defendant committed an assault. In the second portion, the information is more descriptive of the alleged assault in that it charges that Kent was struck about the head, face, and body. The information contains some unnecessary wording which may be treated as surplusage. We hold the information sufficient to charge an offense under Section 559.190, supra.

The defendant, in his brief, has questioned the sufficiency of the verdict of the jury. Whether preserved or not it is our duty on appeal to examine the verdict in a criminal case. The verdict reads (omitting the style of the case): "We, the jury in the above entitled cause, find the defendant guilty and assess his punishment at Two (2) years in the Dept. of Corrections.

"/s/   Marvin Carl Black
"Foreman"

The trial court had by instruction told the jury that if a verdict of guilty was found then the punishment should be assessed "at a term in the Department of Corrections not exceeding five years, or in the county jail not less than six months, or by a fine not less than one hundred dollars and imprisonment in the county jail not less than three months, or by a fine of not less than one hundred dollars." The instruction of the court submitted to the jury for determination whether de-

fendant was guilty or not guilty of but one offense. By the verdict, the jury found defendant guilty and assessed a punishment of two years. A verdict need not designate the place of imprisonment. State v. Herman, Mo., 280 S.W.2d 44, loc. cit. 46(6); State v. Villinger, Mo., 237 S.W.2d 132, loc. cit. 134(6, 7). We rule that the verdict was not fatally defective.

In examining the record, we find that the court, in compliance with the verdict, sentenced the defendant to confinement in "the Missouri Department of Corrections," for a period of two years. The commitment contained similar language. It commanded the sheriff to deliver the defendant "into the custody of the proper officers in charge of said Department of Corrections for the State of Missouri, there to be kept, confined and treated in the manner directed by law, for a period of Two (2) years, as aforesaid." The commitment concluded as follows: "And it is by the Court further ordered that the Warden of said Department of Corrections for the State of Missouri be and he is hereby authorized, directed and required to receive and keep him, the said defendant, Charles Eugene Cox, safely imprisoned in said Department of Corrections for the State of Missouri, until the sentence and judgment of the Court herein be complied with, or until said defendant be otherwise discharged by due course of law."

In designating the Department of Corrections as the place where the defendant (in case of conviction) should be confined or imprisoned, the trial court evidently attempted to follow and comply with Section 216.208, V.A.M.S., 1959 Cumulative Annual Pocket Parts (Laws 1957, p. 316) which reads:

"Commitments to institutions, how made—divisions to assign those committed

"All commitments which under the law heretofore in force would have been made to the state penitentiary,

Jefferson City, or to the Intermediate Reformatory, Cole County, shall hereafter be made to the department of corrections generally and the division of classification and assignment has full power to assign the committed person to any correctional institution or branch thereof within the department appropriate to his class."

That section only requires all commitments to be made to the "Department of Corrections" and nothing more. The trial of a criminal case should be conducted without regard to Sec. 216.208, supra. This section governs only the form of commitment.

The irregularity above noted in no way affected the rights of the defendant. 24 C.J.S. Criminal Law § 1581d, pp. 106, 107.

*Finding no prejudicial error, we hereby affirm the judgment of the trial court.*

All concur.