**STATE of Missouri, Respondent,**

v.

**Larry D. BRADSHAW, Appellant.**

**No. WD 57630.**

Missouri Court of Appeals,
Western District.

Aug. 1, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 2000.

Application for Transfer Denied
Oct. 3, 2000.

**464**

Rosalynn Koch, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sean J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

Before: BRECKENRIDGE, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Larry D. Bradshaw appeals the judgment of his jury conviction in the Circuit Court of Howard County for possession of a controlled substance in or about a correctional facility, in violation of § 217.360,[1] for which he was sentenced to two years imprisonment in the Missouri Department of Corrections.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's and all of the evidence because the evidence was insufficient to convict him of possession of a controlled substance in or about a correctional facility in that the State did not prove each and every element of the same beyond a reasonable doubt, as required by due process. In Point II, he claims that the trial court erred in giving the State's verdict directing instruction because it failed, in several respects, to instruct the jury on all the necessary elements to convict him as charged, as either a principal or accomplice.

We affirm.

## Facts

On July 24, 1997, Corrections Officer Dustin Huddleston was working at the Moberly Correctional Center, a state correctional center. As he was talking on the telephone in an office and watching the school area of the center through a window, he noticed three inmates, two of whom he recognized as the appellant and Michael Grimes, come from the school library and walk toward the bathroom together. He noticed that their eyes were "darty" or "jump[ing] around," as if to determine if there was a corrections officer on duty. Because he was suspicious of them, he quickly finished his telephone conversation and followed the three inmates into the bathroom.

Once in the bathroom, Officer Huddleston walked around a partition and came upon the appellant, Grimes, and an unknown inmate. The unknown inmate was standing with his hand held out in a fist over the appellant's outstretched hand, palm up. Grimes was standing to the side watching. When the appellant saw Officer Huddleston, he immediately yanked his hand back, at which point the officer noticed that the unknown inmate was holding something plastic in his outstretched fist. Officer Huddleston grabbed the unknown inmate's hand and ordered the three to get against the wall. The appellant then shoved Officer Huddleston against a wall and some sinks, causing him to lose his grip on the unknown inmate, who threw the plastic packet on the floor. After the bag dropped to the floor, the unknown inmate and the appellant ran out of the bathroom and one of them yelled, "Flush it, flush it." Officer Huddleston could not identify which inmate had made the statement. In the meantime, Grimes picked the bag up, threw it into the toilet and tried to flush it. Officer Huddleston was able to recover the packet before it was flushed down the toilet and was able to pin

---

1. All statutory references to § 217.360 are to RSMo Supp.1995. All other statutory references are to RSMo 1994, unless otherwise indicated.

Grimes against the wall. The substance contained in the plastic packet was later determined to be cocaine.

On January 28, 1999, the appellant was charged by information in the Circuit Court of Randolph County with the class C felony of possession of a controlled substance in a correctional facility, § 217.360. The appellant filed a motion for change of venue on February 10, 1999, which was sustained. Venue was changed to the Circuit Court of Howard County.

The appellant's jury trial began on May 27, 1999. At the close of the State's evidence, the appellant filed a motion for judgment of acquittal, which alleged, *inter alia*, that the State's evidence was insufficient to convict, because the State did not show that he "possessed" the cocaine or had the requisite mental state to possess it. The trial court overruled the motion. At the close of all the evidence, the appellant again filed a motion for judgment of acquittal, which, essentially, asserted the same grounds as the motion filed at the close of the State's evidence. The trial court overruled the motion for acquittal at the close of all the evidence.

On May 27, 1999, the jury found the appellant guilty. On June 10, 1999, the appellant filed a "Motion for Judgment of Acquittal Notwithstanding the Verdict Or In the Alternative for New Trial," in which he alleged that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's case and at the close of all the evidence, which was overruled. On August 16, 1999, the circuit court sentenced the appellant to two years imprisonment in the Missouri Department of Corrections.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's and all of the evidence because the evidence was insufficient to convict him of possessing cocaine in or about the Moberly Correctional Center in that the State did not prove each and every element of the offense beyond a reasonable doubt, as required by due process. Specifically, he claims that the evidence was insufficient to show, as required for a conviction, that he did any act to aid or abet the principal or principals in committing the crime of which he was convicted or that he had the requisite intent to aid or abet.

■ The record reflects, as the State contends, that the appellant's case was submitted on both principal and accomplice liability. As such, since the verdict form did not require the jury to specify on which theory of liability its guilty verdict was based, we have no way of knowing whether he was convicted as a principal or an accomplice. He could have been convicted as either. Thus, logically, to submit on both theories, allowing the jury to convict on either, the State's evidence had to be sufficient as to both principal and accomplice liability. *State v. Yoksh,* 989 S.W.2d 227, 232 (Mo.App.1999). In this respect, in Point I, the appellant does challenge the sufficiency of the evidence to convict as an accomplice, but not the sufficiency of the evidence to submit and convict on principal liability. He does, however, raise this issue in Point II, challenging, in the first of three subpoints, the sufficiency of the evidence to instruct on principal liability because there was insufficient evidence in the record to demonstrate that he himself possessed the cocaine. As a practical matter, the test for determining the sufficiency of the evidence to convict, the issue presented in Point I as to accomplice liability, and for determining the sufficiency of the evidence to support the giving of a verdict director, an issue presented in Point II as to principal liability, is ultimately the same, "Did the State make a submissible case?" *Id.* As such, we will review in this point not only whether the evidence was sufficient to submit on and convict the appellant of the offense

charged, as a principal, but also as an accomplice.

■■■ " 'In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Clay*, 975 S.W.2d 121, 139 (Mo. *banc* 1998) (*quoting State v. Dulany*, 781 S.W.2d 52, 55 (Mo. *banc* 1989)), *cert. denied*, 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999). "When reviewing the sufficiency of [the] evidence supporting a criminal conviction, the [c]ourt does not act as a ' "super juror" with veto powers,' but gives great deference to the trier of fact." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo.*banc*) (citation omitted), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998); *State v. Ellison*, 980 S.W.2d 97, 98 (Mo.App.1998). Thus, in our review, all evidence favorable to the State and all reasonable inferences drawn therefrom will be accepted as true, and all evidence and inferences to the contrary will be disregarded. *State v. Ervin*, 979 S.W.2d 149, 159 (Mo. *banc* 1998), *cert. denied*, 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999); *State v. Knese*, 985 S.W.2d 759, 769 (Mo.*banc*), *cert. denied*, 526 U.S. 1136, 119 S.Ct. 1814, 143 L.Ed.2d 1017 (1999).

### A. Sufficiency of Evidence to Convict as Principal

■■■ To convict the appellant, under § 217.360, the State was required, as a matter of due process, to prove beyond a reasonable doubt each and every element of the offense set forth in that section. *State v. Scurlock*, 998 S.W.2d 578, 582 (Mo.App.1999) (*citing State v. Roberts*, 948 S.W.2d 577, 590 (Mo. *banc* 1997)); *State v. Price*, 980 S.W.2d 143, 144 (Mo.App.1998). That section reads:

1. It shall be an offense for any person to knowingly deliver, attempt to deliver, have in his possession, deposit or conceal in or about the premises of any correctional center:

(1) Any controlled substance as that term is defined by law, except upon the written prescription of a licensed physician, dentist, or veterinarian;

(2) Any other alkaloid of any kind, any spirituous or malt liquor, or any intoxicating liquor as defined in section 311.020, RSMo;

(3) Any article or item of personal property which an offender is prohibited by law or by rule and regulation of the division from receiving or possessing;

(4) Any gun, knife, weapon, or other article or item of personal property that may be used in such manner as to endanger the safety or security of the correctional center or as to endanger the life or limb of any offender or employee of such a center.

2. The violation of subdivision (1) of subsection 1 of this section shall be a class C felony; the violation of subdivision (2) of subsection 1 of this section shall be a class D felony; the violation of subdivision (3) of subsection 1 of this section shall be a class A misdemeanor; and the violation of subdivision (4) of subsection 1 of this section shall be a class B felony.

§ 217.360. With respect to the elements the jury is required to find in order to convict under this section, there is no applicable MAI–CR 3d. However, in instructing the jury here, the trial court gave the State's verdict director, patterned after MAI–CR 3d 329.81 [Sept. 1, 1999],[2] which deals with possession of a controlled substance in or about a "county correctional facility," in violation of § 221.111.[3] This instruction reads:

State's verdict director being patterned after MAI–CR 3d 329.81.

---

**2.** The use of this MAI–CR 3d was mandatory as of September 1, 1999, and optional as of June 3, 1999. The appellant's trial, however, was in May of 1999. Notwithstanding this fact, there is no dispute on appeal as to the

**3.** Section 221.111 provides:

(As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt:

First, that (on) (on or about) [*date* ], in the (City) (County) of _____, State of Missouri, the defendant (delivered) (attempted to deliver) (had in his possession) (deposited) (concealed) ( [*Name of controlled substance.*], a controlled substance,) (a spiritous liquor) (a malt liquor), (a gun,) (a knife,) ( [*Describe other weapon, e.g., metal knuckles.*] ), and

Second, that defendant did so (in)(or) (about) the premises of ( [*Name or describe jail.*], a county jail) ( [*Name or describe county correctional facility.*], a county correctional facility), and

(Third, that there was no written prescription of a licensed physician, dentist or veterinarian for the controlled substance, and)

(Third,) (Fourth,) that defendant acted knowingly with regard to the facts and the circumstances submitted in this instruction,

then you will find the defendant guilty (under Count _____ ) of (delivering) (attempting to deliver) (possessing) (depositing) (concealing) prohibited articles in or about the premises of a county (jail) (correctional facility).

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of (delivering) (attempting to deliver) (possessing) (depositing) (concealing) prohibited articles in or about the premises of a county (jail) (correctional facility), you will assess and declare ( [*Insert for class B felony: "the punishment at".*] ) ( [*Insert for class C or D felony or class A misdemeanor: "one of the following punishments:"* ] ) [*Insert range of punishment as directed in MAI–CR 3d 304.02.*]

MAI–CR 3d 329.81. Other than the fact that § 217.360 deals with "state" correctional centers and § 221.111 deals with "county" correctional facilities, they are almost identical as to what is prohibited on the respective premises. Logically, then, the required elements of proof would be identical, except with respect to the finding as to the premises on which the act in question is prohibited. Hence, to convict the appellant, under § 217.360, the State was required to prove, beyond a reasonable doubt, that: (1) he possessed cocaine, a controlled substance; (2) he did so in or about the premises of a state correctional center, the Moberly Correctional Center; and (3) he knew the substance he possessed was cocaine. With respect to the sufficiency of the evidence to convict him as a principal, the appellant claims that the evidence was insufficient for the jury to find the possession element. We disagree for the reasons discussed, *infra*.

With respect to the requisite proof element of possession, § 217.360 does not define "possess." However, "possess" and

1. No person shall knowingly deliver, attempt to deliver, have in his possession, deposit or conceal in or about the premises of any county jail or other county correctional facility:

(1) Any controlled substance as that term is defined by law, except upon the written prescription of a licensed physician, dentist, or veterinarian;

(2) Any other alkaloid of any kind or any spiritous or malt liquor;

(3) Any article or item of personal property which a prisoner is prohibited by law from receiving or possessing, except as herein provided;

(4) Any gun, knife, weapon, or other article or item of personal property that may be used in such manner as to endanger the safety or security of the institution or as to endanger the life or limb of any prisoner or employee thereof.

2. The violation of subdivision (1) of subsection 1 of this section shall be a class C felony; the violation of subdivision (2) of this section shall be a class D felony; the violation of subdivision (3) of this section shall be a class A misdemeanor; and the violation of subdivision (4) of this section shall be a class B felony.

"possessed" are defined in § 556.061(22) as meaning

> having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if he has the object on his person or within easy reach and convenient control. A person has constructive possession if he has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint. . . .

We find this definition controlling as to "possession," as it appears in § 217.360, in that, although this section is not found in the criminal code, as stated by the Missouri Supreme Court in *State v. Withrow*, 8 S.W.3d 75 (Mo. *banc* 1999), "the code governs construction of all criminal offenses whether the offense is defined inside or outside the code in the absence of a specific exception." *Id.* at 79. As further support for using this definition of "possessed," we would note that it is almost identical to the definition of "possessed" found in Chapter 195, dealing with drug offenses, including possession of a controlled substance, § 195.202. Logically, there is no reason to draw a definitional distinction between possession for purposes of §§ 217.360 and 195.202. Section 195.010(33) defines

> "[p]ossessed" or "possessing a controlled substance", a person, with the knowledge of the presence and illegal nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in

constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint. . . .

In any event, utilizing the definition of "possessed" found in § 556.061(22), we find that it was sufficient for the State to convict to show that the appellant had sole or joint possession of cocaine, either actual or constructive.

■ The record reflects that the appellant was never seen by Officer Huddleston with the cocaine in his actual, physical possession. Rather, he observed the cocaine for the first time in the possession of the unidentified inmate and then in the possession of Grimes as he tried to flush it down the toilet. However, to convict, the State was not required to present direct evidence establishing that the appellant had actual, physical possession of the cocaine. Circumstantial evidence was sufficient to prove that he had either actual or constructive possession, joint or sole. *State v. Davis*, 982 S.W.2d 739, 742 (Mo. App.1998), *overruled on other grounds by Withrow*, 8 S.W.3d at 78–80 & n. 5. In this respect, the record reflects that Officer Huddleston became suspicious of the appellant and Grimes when he saw them walking to the bathroom and noticed that their eyes were "darty" or "jump[ing] around," as if they were trying to determine if an officer was on duty. Acting upon his suspicions, he followed them into the bathroom, where he observed the appellant with his open hand, palm up, underneath the closed fist of an unknown inmate. When Officer Huddleston entered the bathroom, the appellant quickly yanked back his hand, at which time the officer saw something plastic in the unidentified inmate's fist. Officer Huddleston grabbed the fist of the unidentified inmate and ordered both men and Grimes, who was watching what was transpiring, to get up against the wall. It was at this point that the appellant shoved the officer

against the bathroom sinks and fled. As a result of being shoved, Officer Huddleston was caused to lose his hold on the unidentified inmate, who then threw the plastic packet, later determined to contain cocaine, on the floor, which was picked up by Grimes. Someone then yelled to "flush it." Grimes did attempt to flush the packet down the toilet, but Officer Huddleston grabbed it before he could do so.

In our view, from the evidence regarding the positioning of the hands of the appellant and the unidentified inmate and the appellant's jerking his hand back when Officer Huddleston entered the bathroom, a reasonable jury could have concluded that either the unidentified inmate had just taken the cocaine from the appellant or that the appellant was getting ready to receive the cocaine from the unidentified inmate. As such, this evidence alone would have been sufficient for the jury to find that the appellant was in actual or constructive possession of the cocaine and convict him as a principal of the offense charged. In addition, however, was the added evidence from which the jury could have inferred reasonably that the appellant was attempting to help conceal the cocaine and/or flee from the scene of the crime by shoving the officer and running from the bathroom. Such evidence has been held to be sufficient to establish knowing possession of a controlled substance. *State v. Powell*, 973 S.W.2d 556, 559 (Mo.App.1998); *State v. Shinn*, 921 S.W.2d 70, 73 (Mo.App.1996). Thus, contrary to the appellant's claim, the evidence was sufficient to support the giving of the State's verdict director with respect to principal liability and to convict him as a principal of knowingly possessing cocaine in or about the Moberly Correctional Center.

### B. Sufficiency of the Evidence to Convict as an Accomplice

The appellant next claims that the evidence was insufficient to convict him as an accomplice. Specifically, he claims that the evidence was insufficient to establish that he did any act that aided the unidentified inmate or that he had the necessary intent to aid Grimes in possessing the cocaine. We disagree.

▮ With respect to accomplice liability, Missouri has eliminated the "distinction between principals and accessories." *State v. Davis*, 963 S.W.2d 317, 326 (Mo. App.1997). Now, all persons who act in concert to commit a crime are equally guilty. *State v. Martin*, 971 S.W.2d 904, 907 (Mo.App.1998). Section 562.041.1 provides, in pertinent part, that

> [a] person is criminally responsible for the conduct of another when
>
> . . .
>
> (2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

"To make a submissible case of aiding and abetting, there must be some evidence that defendant associated himself with the venture or participated in the crime in some manner." *State v. Chambers*, 998 S.W.2d 85, 91 (Mo.App.1999). "The evidence, however, need not show that the defendant personally committed every element of the crime"; mere encouragement is enough. *Id.; see also State v. Sensabaugh*, 9 S.W.3d 677, 679 (Mo.App.1999). "The law imputes to [the defendant] the criminal agency of his accomplices. A person who acts with another with a common intent and purpose in the commission of a crime is guilty, whether he is a principal or merely aids and abets the crime." *State v. Edgar*, 2 S.W.3d 896, 898 (Mo. App.1999). "[A]ny evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *Clay*, 975 S.W.2d at 139. Thus, in this case, in order to convict the appellant as an accomplice, under § 217.360, the State was required to

prove that: (1) the unknown inmate and/or Grimes knowingly had cocaine in their possession in the Moberly Correctional Center; and (2) the appellant, with the purpose of promoting or furthering the possession of the cocaine, acted together with or aided one or both in possessing the same. § 217.360; § 562.041.1(2); MAI–CR 3d 325.02 [Sept. 1, 1990]; MAI–CR 3d 304.04 [July 7, 1997].

We find that the evidence here was sufficient to convict the appellant as charged on a theory of accomplice liability. We would first note that the appellant did not dispute the fact that the unknown inmate actually possessed the cocaine. As to the doing of any act in aid of the unidentified inmate in possessing the cocaine, as we discussed, *supra,* a jury could have inferred reasonably from the evidence that he and the appellant were engaged in a drug transaction when Officer Huddleston entered the bathroom, which logically would constitute an act of aiding or abetting the unidentified inmate in possessing the cocaine. As such, under the evidence, the jury was free to convict him as an accomplice, having aided and abetted the unknown inmate in possessing the cocaine, rendering it unnecessary for us to discuss whether the evidence was also sufficient to convict the appellant of aiding and abetting Grimes.

Point denied.

## II.

In Point II, the appellant claims that the trial court plainly erred in giving the State's verdict director. Specifically, he claims that the State's verdict director was defective in three respects, the first dealing with the submission of the case on principal liability and the latter two dealing with its submission on accomplice liability. The State's verdict director, Instruction No. 5, was patterned after MAI–CR 3d 329.81, the required MAI–CR for submitting an offense under § 221.111, as discussed, *infra,* and modified by MAI–CR

3d 304.04, to submit accomplice liability. The instruction read:

A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 24, 1997, in the County of Randolph, State of Missouri, the defendant or another or others, had in his or their possession cocaine, a controlled substance,

and

Second, that defendant did so in or about the premises of Moberly Correctional Center, and

Third, that defendant acted knowingly with regard to the facts and the circumstances submitted in this instruction,

then you are instructed that the offense of possessing prohibited articles in or about the premises of a correctional facility has occurred. And if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that offense, the defendant acted together with or aided another or others, in committing that offense,

then you will find the defendant guilty of possessing prohibited articles in or about the premises of a correctional facility.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

With respect to the appellant's first claim in this point, that the evidence was insufficient to support the submission of

the case on principal liability, we have already addressed and denied that claim in our discussion of Point I, *supra.* As to the appellant's other claims in this point dealing with the jury's being improperly instructed on accomplice liability, the appellant claims that the State's verdict director was deficient because: (1) it did not ascribe all the elements of the offense to the alleged principals as required to convict him as an accomplice; and (2) it did not require the jury to find that the principals "knew the nature of the substance." Logically, before we address these claims on the merits, we must address first the State's contention that the appellant waived any appellate review of the same by failing to object to the State's verdict director at trial.

## A. Waiver of Appellate Review

The State contends that the appellant waived appellate review, including plain error review, of his claims of instructional error raised in this point, when he failed to specifically object to the State's verdict director at trial, as required by Rule 28.03,[4] relying on *State v. Martindale,* 945 S.W.2d 669, 673 (Mo.App.1997). In *Martindale,* the Eastern District of this court held that if the revised version of Rule 28.03 was to have any effect, the failure to specifically object constituted a waiver of any appellate review, including plain error review under Rule 30.20. *Id.* at 673. For the reasons discussed, *infra,* we reject the Eastern District's holding in *Martindale,* with respect to waiver of plain error review.

▮ Rule 28.03, which governs objections to instructions and verdict forms, provides:

Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party

objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions and verdict forms. The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

This rule does not expressly prohibit plain error review under Rule 30.20. This is not surprising to us, given the numerous and significant constitutional violations that can arise from instructional error. Further, we do not read it as being in conflict with Rule 30.20, as the State contends. Rather, giving the language used its plain and ordinary meaning, *State v. Tinoco,* 967 S.W.2d 87, 89 (Mo.App.1998) (*citing Rohwer v. State,* 791 S.W.2d 741, 743 (Mo.App. 1990)), we interpret it as providing simply that in order to preserve a claim of error with respect to a jury instruction, the party is required to make a specific objection to the instruction at trial. Thus, when a party fails to specifically object to an instruction at trial, any claims of error with respect thereto are not preserved for appellate review. However, these unpreserved claims of error may still be reviewed, in the appellate court's discretion, for plain error under Rule 30.20. *State v. Dunn,* 7 S.W.3d 427, 430 (Mo.App.1999); *State v. Santillan,* 1 S.W.3d 572, 578 (Mo. App.1999). As such, we find that the appellant did not waive plain error review under Rule 30.20 as to the giving of the State's verdict director when he failed to specifically object to it at trial, as required by Rule 28.03. *See State v. Chambers,* 998 S.W.2d 85, 88 n. 1 (Mo.App.1999) (rejecting the State's argument that it was "precluded from exercising [its] discretion to grant plain error review simply because counsel said he had no specific objection to the instruction, and generally objected to all instructions").

---

**4.** All rule references are to Missouri Rules of Criminal Procedure (1999), unless otherwise    indicated.

Having determined that the appellant did not waive plain error review of his claims of instructional error in this point by failing to object to the State's verdict director, we turn now to their merits.

### B. Discussion

In claiming that the State's verdict director was in error because it failed to properly instruct on accomplice liability, the appellant contends that it failed to require the jury, in paragraphs two and three, to find that the alleged principals, either the unidentified inmate and/or Grimes, possessed the cocaine "in or about the premises of Moberly Correctional Center" and knew or was aware that the substance in the plastic packet was cocaine. In this regard, the verdict director, in paragraphs two and three, only required the jury to find conduct as to the appellant, but not as to the principals. In addition, he claims that paragraph three was deficient in that, not only did it not instruct the jury as to the principals, but it did not require the jury to find that they knew or were aware of the controlled substance's "presence and illegal nature," as is required when instructing on possession in violation of § 195.202 under MAI–CR 3d 325.02.

In making his claims of instructional error as to accomplice liability, the appellant assumes that the evidence was insufficient to submit on principal liability, such that the verdict director should have been directed solely to the acts and conduct of the principals. However, as we found in Point I, *supra*, the evidence was sufficient to submit on principal liability, such that it was proper to submit the appellant's case on both principal and accomplice liability, as the State asserts it was attempting to do in its verdict director. However, in doing so, the State's verdict director had to be proper as to both submissions, inasmuch as a verdict director has to be supported by the evidence in the record, *Yoksh,* 989 S.W.2d at 232, and we have no way of determining here whether the jury found the appellant guilty as a principal or accomplice. Hence, regardless of the fact that the appellant's case was submissible on principal liability, we are still required to determine whether the appellant's claims concerning the State's verdict director was in error as to its submission of accomplice liability.

Instructional error seldom rises to the level of plain error. *State v. Roe,* 6 S.W.3d 411, 415 (Mo.App.1999); *State v. Cates,* 3 S.W.3d 369, 372 (Mo.App.1999). "To show that the trial court 'plainly erred' in submitting a jury instruction, a defendant 'must go beyond a demonstration of mere prejudice.'" *Cates,* 3 S.W.3d at 372 (quoting *State v. Davidson,* 941 S.W.2d 732, 736 (Mo.App.1997)). "'In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict,'" *Roe,* 6 S.W.3d at 415 (quoting *State v. Doolittle,* 896 S.W.2d 27, 29 (Mo. banc 1995) (citation omitted)), and "'cause[d] manifest injustice or miscarriage of justice.'" *State v. Schnelle,* 7 S.W.3d 447, 451 (Mo.App.1999) (quoting *State v. Cline,* 808 S.W.2d 822, 824 (Mo. banc 1991)). The "'[d]efendant bears the burden of establishing manifest injustice.'" *Id.* (quoting *Cline,* 808 S.W.2d at 824).

Rule 28.02(c) provides: "Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes On Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." Rule 28.02(f) provides: "The giving or failure to give an instruction or verdict form in violation of this Rule 28.02 or any applicable Notes on Use shall constitute error, the error's prejudicial effect to be judicially determined." The State concedes that its verdict director was in error because it did not track MAI–CR 3d 304.04, in that it failed to ascribe to the appellant *or* the principals the elements of the offense charged, as was required by

the Notes on Use 5(b), 5(c). However, the State contends, *inter alia*, that manifest injustice did not result because the elements instructed upon in paragraphs two and three of the State's verdict director, as to the alleged principals in this case, were not in dispute at trial.

The State is correct in asserting that, if an element is not disputed at trial, the failure to correctly instruct the jury on that element does not result in manifest injustice requiring reversal. *Roe,* 6 S.W.3d at 415; *Cates,* 3 S.W.3d at 372. In that regard, a careful review of the record indicates that the appellant never disputed at trial the fact that the unidentified inmate and Grimes knew that a drug transaction was taking place and that it occurred in or about the premises of the Moberly Correctional Center. What he disputed was his involvement in the transaction. As such, manifest injustice did not result from the trial court's failure to properly instruct the jury on accomplice liability in the respects asserted by the appellant.

Point denied.

## Conclusion

The circuit court's judgment of the appellant's jury conviction for possession of a controlled substance within a correctional institution, in violation of § 217.360, is affirmed.

BRECKENRIDGE, P.J., and SMART, J., concur.